All right, it appears in this case we have one counsel in person and then we have two people on remote and is that the person on remote is, can you state your name for us? Yes, Your Honor, Michael Smith. Okay, and you're representing the Lees, right, or Jason Lee, correct? The Lees, correct, Your Honor. Okay, all right, and so the appellant is here in person and is everyone, can everyone see and hear okay? Yes, Your Honor. Okay, can you see okay? Yes, I can. Okay, all right, then I think we're ready to start and please state your name and your appearance and you have a total of 15 minutes for your side. I would like to reserve five minutes, Your Honor. All right, good luck. Thank you. It's aspirational, but we'll hopefully be able to save it for you. We've got three issues and very limited time, so good morning, Your Honor, may it please the court. My name is Brent Meyer. I'm counsel for the appellant and creditor in the bankruptcy case Mission Hen, LLC. In this case, we have three specific issues, each one of which is independent of one another and does not overlap one another, and so I'm going to take them piece by piece unless the court wants to focus on one issue first before the others. We have the first issue that we need to look at before we determine the two other issues is eligibility under 109E. The eligibility standard is to determine whether or not an individual wage earner is eligible to be a debtor in Chapter 13. In this case, at the time that the bankruptcy case was filed, prior to the recent amendments that changed the debt limits, debtors had to have under $419,275 of unsecured debt. This court, on multiple occasions, has looked at the issue of eligibility, and they've determined that eligibility is similar to the pleading standard where you look at the four corners of the document for diversity jurisdiction. So long as the documents, here being the petition, Schedules D, E, and F, indicate that the secured debt and the unsecured debt amount, if you add up those amounts and take into consideration whether or not a debt is partially secured or can be modified... Well, I have a question, though. It seems that your client, or I don't know if that was you... It was not your client. Okay. That they didn't object until the re-evaluation on the house was done, and they didn't like the number. So they went along, everything was going along smoothly, and then they didn't object to the re-evaluation being done, and then when the number didn't come out the way that they wanted, that's when they first objected. Am I wrong in reading the record that way? Well, you're correct in terms of timing that it wasn't, the objection was not lodged until the objection of the fourth amended Chapter 13 plan, but it's not necessarily because of the valuation under the 506A standard. What it really, and the footnote in my opening brief cites this, is there could have been a strategic reason that that was done. And if 1322C2 was not applicable, meaning that you could not modify the claim, you could only modify the payment, then here the full amount of the secured debt, which would have been approximately $470,000, would have had to have been paid back over the five-year period. So if they didn't object for strategic reasons, then they can't be punished later for not objecting? Well, I don't believe they can, Your Honor, and here eligibility, as this court has recognized, is not jurisdictional. So it's one of those things that the court, it's not, eligibility is not jurisdictional, so this is a situation where the creditor here, Mission Hen, could have elected to allow potentially a non-eligible debtor to proceed. It's curious why the Chapter 13 trustee, who is the one that's really in charge of enforcing some of these procedural guidelines, didn't raise the objection themselves, but that's a separate point that is not before this court right now. But there are reasons that Mission Hen could not, or elected not to, raise eligibility initially. But here's my question, and that is, we know that the later evaluation, when we actually do a, it's not just the allegations in the initial filing, but the later evaluation, when the Bankruptcy Court actually looks at the property, this is now Section 13, Chapter 13, eligible. Why do we have to disregard that? Because that's your argument, we have to disregard that, we have to go back to the original filing.  Yeah. Well, because this court has specifically recognized in both SLAC and SCOVIS that we don't look to post-petition events. But they use the word normally. Yeah, but normally, well, normally is a term of art, and the BAP relied. And the Bank, BAP in this case said, well, this is not a normal case. But then the question, what is not normal about this case? There's only two ways that this could not be normal. It's the fact situation that gave rise to it. Well, this is an everyday garden variety Chapter 13 case, or it's not normal because the objection was raised six months later after evaluation hearing. Well, since it's not jurisdictional, it doesn't need to be. Is normally, quote unquote, a qualifier under 109E, which is the BAP's interpretation? I think normally is a qualifier on, to qualify that only for bad faith. Because otherwise, if you read that, that sentence, normally, one, doesn't need to be in there, but normally doesn't add a, it's, we look to schedules in less bad faith and in less other post-petition events. And if you take what this, the BAP looked at and said, let's look at other post-petition events. Well, we've already found the BAP has said in Fountain and this court has said in Slack and Scope, we don't look at post-petition events. And if you look at Slack, we knew post-petition, there was a judgment entered for $650,000. And this court specifically said, we disregard that even though we know it's true at this time. So why would you normally then look for post-petition events to bring back to a pre-petition? It just logically doesn't make sense. So we have two qualifiers. I'm sorry, go ahead, Judge Fletcher. It's not so much post-petition events as it's post-petition evaluation that's more subtle and sophisticated, unless you call a hearing that gives you an evaluation an event. Well, and then, and this is where in our, in our opening brief, we say that there's a slippery slope here. There's a lot of quote, events that happened post-petition, for instance. What happened? Well, let's take the inverse to be true. What if the debtors originally valued the property at the value of the bankruptcy court came, and then the bankruptcy court subsequently said, no, the value of the property is $1,050,000. Are we going to now make these debtors ineligible six months later? That plays out where we have post-petition financing. When we have all types of events that eligibility over a five-year period, if it's not jurisdictional, when are we going to make these debtors eligible? The idea of eligibility is like subject matter jurisdiction. I think this would be a very different case if there had been an objection at the time of the initial filing. Well, I, I, I respectfully disagree in the sense that Mission Hen, the, the debtors are trying to, to, to eliminate at least $250,000 of the debt of Mission Hen. That issue had not been decided by the bankruptcy court at the time that they lodged the objection to the fourth amended plan. And so at some point of time, Mission Hen could have said, I'm okay with this if you pay me the full $470,000 over a five-year period. But if this court rules that 1322 C2 is applicable where they can modify the claim, then Mission Hen says, no, I'm not okay with that. I'm now going to raise eligibility. And I don't think there's a waiver. And I think it's important here that the bankruptcy court never found a waiver. The debtors never objected and, and asserted a waiver. And the bankruptcy appellate panel for the first time in a footnote said, well, impliedly they could have found a waiver. And I think that's just a step too far here to get waiver as the argument for which 109E is not applicable for the first time on appeal. That should not happen before this court right now. Well, there's, okay. I just kind of want to frame this because is it correct that there is no dispute after the re-evaluation that appellees meet the eligibility standard for 109E? If you take that, that's an easy question. Yes. If you take the valuation and plug it into the schedules, then your statement is correct, Your Honor. Okay. And so then regarding 109E, I do think that it's relevant that your client never objected, but if we agree that the BAP, that normally is a qualifier, why should we not conclude that specific circumstances here are not normal and affirm on that basis? Because what is not normal? When we ask to put a second qualifier. Well, I'm not normal, but then that doesn't make me ineligible to do my job. I'm not normal either, Your Honor, but what we're trying to eliminate here is these ad hoc inquiries post-petition, because what we're now going to turn this into is a circus for eligibility purposes. And we now have a new chapter of chapter 11, sub-chapter 5. So we have chapter 13, chapter 12, sub-chapter 5 of chapter 11, each one of which have debt limit obligations. Sometimes they're hotly contested because of the rights you have under each chapter. If we allow for these ad hoc inquiries post-petition on certain events, we're now creating sideshow litigation over an eligibility issue that should be looked at as of the petition date, as of the schedules on the four corners of the document. It could have been looked at, but your client didn't ask for it to be looked at. Well, we did ask for it. We objected on the fourth amended plan and we look back and under SCOBUS. But that was after you had the re-evaluation. Well, I don't know if the, I mean, you can look at it at that time. The failure to qualify was just evident from on the face of it. And then, and your client didn't object at that time. Well, but to find a waiver of that, the waiver arguments usually go once the confirmation is preclusive or res judicata on those issues, but at the time we objected, the court did not confirm the plan. So on what part of this continuum is my client required to object on day one? Maybe that's fine. Day 30, that might be fine, but six months is too far. Now we're adding another scope to this is my client has an obligation to object. On day one or 30, but can't do it six months later. And now we're adding normally to a second qualifier. But let me ask you this, as to the modification, can you point this panel to any legislative history of section 1322 C2 or circuit precedent from any circuit that supports your position? Seems to me the other circuits don't support your position. Well, if we look at, if we look at the circuit at this time, we sit here now let's be very clear is there's no circuit that is, uh, that has adopted the argument we have on 1322 C2, but it's important that we, as we look at this, this is why this was the third argument that we raised is a very important issue. But if this court either finds on eligibility or feasibility, I would respectfully request that this court refrains from ruling on that issue now, because it's a very important issue, but no, the fourth circuit in Herbert, it took an en banc, uh, panel of the fourth circuit to overturn prior precedent of 22 years in in rate wit. So we know that the fourth circuit for 22 years, believe that the argument that we're advancing now was the, was the rule of law for 1322 C2. The 11th circuit has also agreed with the analysis of the fourth circuit. But you don't have any circuits in your pocket, right? No, there's only two circuits right now. And they're both against me on the 1322 C2 issue. Do you want to save the balance of your time? Yes, that would be a great, well, unless we haven't addressed the other issue of, of, I would let you address it on rebuttal if you want, if you want. I mean, I just have a few comments, but I'll address on rebuttal. Thank you. Okay. Thanks. All right. We'll hear from the appellee. Uh, good morning. Uh, may it please the court, Michael Smith for appellees, Jason Emily and Janice Chen. Uh, I agree with, with, with the court, with the BAP. This case is not normal. Uh, it is unusual. And I guess in a sense did cause a circus for the appellants to wait, you know, essentially nine months to make an argument about, uh, 109E eligibility. Uh, secondly, if their theory is the correct theory, it would require the court to disregard its own order, its own findings. Uh, also an unusual thing. I don't normally see that. Um, and I, we should definitely focus on, uh, the language used in SCOVIS in, in, in. Well, let me ask you about SCOVIS as to the 109E issue. Would we have to carve out an exception to the rule articulated in SCOVIS or do you believe you can win based on SCOVIS as it currently exists? I believe, uh, based on SCOVIS as it currently exists, uh, uh, again, they left room there, I believe with, you know, the word should normally determine the debtor's original, uh, based on the debtor's original schedules. Uh, they could vary up easily if they wanted to, but must always, uh, determine, must be determined by the debtor's original schedules or, or must without exception, I apologize. Oh, I was just agreeing with you.  Oh, sorry. Sorry. Uh, and you know, the whole point of SCOVIS I believe is, is things should normally be determined on, on the file schedules, uh, for judicial expediency. And I don't see how that's achieved by allowing, uh, the appellant to wait six months, which I honestly don't believe it was strategic. I think the original counsel just forgot or was unaware of it. Um, I don't see how that would promote judicial expediency to allow, you know, the months to go by six, seven, eight months to go by, uh, and force a bankruptcy court judge to ignore all its orders, uh, to ignore all the time spent on, you know, the evidentiary hearing, uh, all the time spent on, uh, on the case. Um, simply for what might've been a strategic reason. I think that, that more would cause a circus than anything else. Well, it doesn't, I mean, I was kind of shocked by the amount of money that your clients had to deal with how they could ever deal with that debt. And so as to the feasibility, it seems that when you calculate your client's income, including the contribution from Ms. Linda Chen, your clients arguably do not appear to have enough funds to cover the monthly payments outlined in the plan. Why does not that not make it the plan? Not, why doesn't it make it unfeasible? Oh, well, your honor, for the, the, the declaration filed by, uh, the, the mother and mother-in-law, uh, she had sold a property and had sufficient funds from the sale of the property to contribute to the debtors to, uh, fund the plan, uh, as proposed, um, contribute the full 4,900. Is she to the every month? Is she, that, that was, uh, that was the basis of the declaration. She was willing to contribute, uh, what was necessary or in the case of the declaration of 4,900 to, um, to fund the plan. And there was sufficient, uh, funds from the sale of the property to pay that and above and beyond. Um, and by what standard do we review the feasibility determination of the lower court? I believe the clear, clearly erroneous, uh, I believe the standard is set forth, uh, by definite firm conviction that a mistake had been committed on the part of the bankruptcy court judge and determining that there was feasibility, uh, when there was proceeds from a sale, uh, above $800,000. And within the declaration, the debtor's mother and mother-in-law, um, stated that she would, uh, contribute, uh, that she lived there, that they were related. So there was a will and the means. And, uh, I don't believe it's a clear mistake that someone would assume with $800,000, you'd be able to contribute, um, the funds to make the plan feasible. So explain to me from your perspective, what was the strategic reason that, uh, the appellants did not object? I think they... At the time that they did, how were they, what was their, obviously they felt that there was a way that they could get their client in a better position. Was that as a secure debtor or what, and what, what was their strategic reason for not objecting? I don't believe there was one. Uh, I honestly think it was, uh, um, um, they forgot. I know Mr. Meyer was not representing him at the time because if, quite honestly, if they had not contested the, uh, value of the property, um, and let it go as, as is, then yes, there would be an argument on, you know, no one's contesting the value of the property. Uh, the schedules as filed would show the debtor is, uh, above, uh, or not within the debt limits of 109E. However, here they immediately objected to the valuation. Uh, so there was... Well, they didn't immediately, they didn't evaluate to the court revaluing. They objected to the court's revaluation. Is that right? Am I getting that wrong? They said the court could do it, but then when the number came out and they claimed that crammed it down or something that then, then they objected. Well, no, they, they objected to our motion of value. So they didn't agree with our valuation of the property. So eventually the court determined what the correct valuation of the property was, and that put us within the debt limits. And the objection to the valuation was what, what figure did they propose? Uh, it, uh, I apologize. I don't have that in front of me. It was lesser, it was less than, than, than our number. So it, it, it created less of a secure debt, which brought us within the 109E debt limits. Okay. We don't have any additional questions of you, so it's up to you how, if you want to use the rest of your time or not. Well, the, your honors, if you don't have any other questions of me, then I'd submit on what, uh, was filed in my, um, answer and what was filed with the amicus brief. And I thank you so much. Thank you. Thank you. Um, since we're on the issue of feasibility, I think it's very important for this court to take a look at what has been filed in terms of actual amount that can be contributed. First is extra bit of the record, 208 is the declaration of Linda Chen. And in particular, paragraph four says, and I quote, I will contribute 4,900 every month for the full term of the plan. Or more.                       She said, or more. Does not include the word or more, your honor. Paragraph four is specific. It says $4,900 for the full term of the plan. I believe I have the ability to make this contribution and that I will continue to have the ability to make this contribution for up to five years. This contribution in a specific dollar amount coupled with a schedule I and J filed under penalty and perjury by the debtor indicates that the debtors have only $5,897 of disposable income each month. And starting in month 10, the plan payment had to be $6,293. The bankruptcy court never had an evidentiary hearing. Ms. Chen never testified and the debtors never testified regarding income. So all... Trying to find her declaration. I wrote down that it said, or more. Your honor, I'll refer you to paragraph four and it does not say or more. It says, I will contribute every month this amount. It's extra bit of the record, 208 and 209, second volume. More specifically, extra bit of the record 332 gives the bankruptcy court, it's page 18 of the transcript, gives the bankruptcy court's justification. Number one, the trustee was fine with eligibility. Well, that's a out of court statement made by a trustee without declaration of evidence and admissible. There was no evidentiary objection to the declaration of Ms. Chen. We're not contesting the evidentiary objection. We're stating that the declaration itself said a specific dollar amount. And third, that the declaration was, quote, enough to satisfy the standard of 1325A6. It required, as the bankruptcy appellate panel indicated, that the bankruptcy court must have, quote, implicitly found that the debtors were eligible. The debtors have all... The debtor bears the burden of all elements of confirmation under 1325 and having a declaration coupled with schedules filed under penalty of perjury showing that they have less than $400 than what's required to make the plan payment. That can't be enough and that is clearly erroneous without evidentiary testimony that the bankruptcy court took. The plain evidence in this case submitted to the bankruptcy court did not allow the bankruptcy court to find the plan was feasible under 1325A6. So the eligibility, I think, is clearly determined. The last point I will make, I think we've touched on the first two points, is the 1322C2 argument. As I previously indicated, the Fourth Circuit and Eleventh Circuit have ruled inconsistent with my position, but I believe that the dissent in Hurlburg, the Fourth Circuit's decision, there's three judges or three justices that joined that dissent. There are very strong arguments that support our position and they look to the not to support their position, but as a further justification of their position is correct, is that Nobleman was decided a year before. The legislative history is absent of any indication of Nobleman indicating that they wanted to overrule a Supreme Court precedent. They would have clearly identified their ability to do so in there. The absence of that site to Nobleman, I think, is very, very strong that 1322C2 did not mean to overrule that issue. And second is, if you look at the heading and the title of 1322C2, indicates it's quote, a period for curing default related to principal residence. It says nothing about, and this is the title of, I believe it's 301 of the House Act, which was the act that was finally made into 1322C2. It says nothing about cramming down, stripping, or using 506A and D to modify the mortgage. It talks about curing a default related to the principal mortgage. And the final point I'll make is, everyone talks about this at 1322C2 as being a device to deal with short-term or predatory lending. This was your typical HELOC mortgage. It was a 10-year draw, a 10-year repayment, so a 20-year mortgage with a 5.12% interest rate, clearly was not the type of mortgage that was predatory or one that Congress would envision would circumvent the anti-modification provisions to 1322B2, which Nobleman said cannot be modified in Chapter 13. With that, I'll submit if there's anything else. All right. Thank you both for your argument in this matter. It will stand submitted. Thank you. Thank you. Thank you.
judges: SCHROEDER, FLETCHER, CALLAHAN